STEPHEN A. EDWARDS, Individually and Doing Business as JUNIOR CAREERS, Appellant, v. CITY OF RENO, Respondent.

No. 16763

August 27, 1987                    742 P.2d 486

*McAuliffe, White, Long & Guinan* and *Hamilton & Lynch,* Reno, for Appellant.

*Robert L. Van Wagoner,* City Attorney, and *Tudor Chirila,* Senior Assistant City Attorney, Reno, for Respondent.

## OPINION

*Per Curiam:*

This appeal presents a multi-pronged constitutional challenge to a regulatory scheme enacted by the City of Reno which distinguishes between peddlers and solicitors, and imposes different licensing fees based on the distinction. Though we conclude that the regulatory scheme is constitutional, we agree with appellant that the district court erred in awarding $6,690.60 to the City of Reno on its counterclaim.

Junior Careers is an organization that employs teenagers to sell various goods door-to-door. Appellant, Stephen Edwards (Edwards), is a crew manager for Junior Careers, and Edwards' job is to recruit the teenaged salespeople and to transport them to and from the different sales areas. Although Edwards obtained the permits needed to sell items door-to-door in other areas, Edwards did not obtain the requisite permit from the City of Reno (City) because the cost was prohibitive. According to the City, Edwards and his salespeople were peddlers; therefore, each person was required to obtain a license from the City at a minimum cost of $318.60 per quarter per person. Edwards brought suit in the court below seeking a declaration that the distinction between peddlers and solicitors was unconstitutional. The City counterclaimed for license fees because Edwards and his crew had sold

items door-to-door in the city without the required licenses. Edwards appeals both the ruling that the distinction does not violate constitutional safeguards and the award of $6,690.60 to the City on its counterclaim.

The ordinance of which Edwards complains is Reno Municipal Code (RMC) § 4.40.010, which states:

> (a) "Peddler," as used in this chapter, includes any person, whether a resident of the city or not, traveling by foot, wagon, automotive vehicle, or any other type of conveyance, from place to place, from house to house, or from street to street, carrying, conveying or transporting goods, wares, merchandise, meats, fish, vegetables, fruits, garden truck, farm products or provisions, offering and exposing the same for sale, or making sales and delivering articles to purchasers, or who, without traveling from place to place, sells or offers the same for sale from a wagon, automotive vehicle, railroad car, or other vehicle or conveyance, and further provided that one who solicits orders and as a separate transaction makes deliveries to purchasers as a part of a scheme or design to evade the provisions of this chapter is deemed a peddler subject to the provisions of this chapter. The word "peddler" includes the words "hawker" and "huckster."
>
> (b) "Solicitor," as used in this chapter, is defined as any individual, whether resident of the city or not, traveling either by foot, wagon, automobile, motor truck, or any other type of conveyance, from place to place, from house to house, or from street to street, taking or attempting to take orders for sale of goods, wares and merchandise, personal property of any nature whatsoever for future delivery, or for services to be furnished or performed in the future, whether or not such individual has, carries or exposes for sale a sample of the subject of such sale or whether he is collecting advance payments on such sales or not, provided that such definition shall include any person who, for himself, or for another person, firm or corporation, hires, leases, uses or occupies any building, structure, tent, railroad boxcar, hotel room, lodging house, apartment, shop or any other place within the city for the sole purposes of exhibiting samples and taking orders for future delivery.

RMC § 4.40.020 makes both peddling and soliciting without a license unlawful; however, the license fees for peddling and soliciting differ dramatically. RMC § 4.40.060(b) provides that one applying for a license to solicit shall pay $15.00 every six months. On the other hand, RMC § 4.40.060(a) sets out a sliding

scale for fixing license fees to be paid by peddlers. The scale is set out in the margin; however, as an example, a peddler with gross receipts per quarter less than $3,000 must pay $318.60 per quarter for the required license.[1]

Edwards first contends that the distinction between peddlers and solicitors is unconstitutionally vague because "[t]he modifier to [RMC § 4.40.010] subsection (a) which causes those who attempt to defeat the ordinance by later delivery to be nonetheless classified as 'peddlers' defeats the definitional distinction. . . ." It is our opinion that Edwards is not in a position to challenge this portion of RMC § 4.40.010.

It is well established that a statute or ordinance which is so vague that men of common intelligence must guess at its meaning violates the due process guarantees found both in the Nevada and United States Constitutions[2] because no fair notice or warning of the prohibited action is given. Eaves v. Board of Clark Co. Comm'rs, 96 Nev. 921, 923, 620 P.2d 1248, 1249 (1980); Hynes v. Mayor of Oradell, 425 U.S. 610 (1976). However, it is also well established that one who is not prejudiced by the operation of a statute or ordinance may not question its validity. Spears v. Spears, 95 Nev. 416, 418, 596 P.2d 210, 212 (1979); *see also* Westinghouse Beverage Group v. Dep't of Taxation, 101 Nev. 184, 698 P.2d 866 (1985). Edwards is clearly a peddler; therefore, any vagueness in the portion of RMC § 4.40.010(a) applicable to one attempting to circumvent classification as a peddler does not prejudice Edwards.[3] Accordingly, we decline to reach this assignment of error.

Contrary to Edwards' next contention, we conclude that the

[1]The fees for a peddling license vary according to the applicant's gross receipts for the previous quarter according to the following chart:

| Gross Receipts | Fee Per Quarter |
|---|---|
| Less than $3,000 | $318.60 |
| 3,001– 5,000 | 531.00 |
| 5,001–10,000 | 1,062.00 |
| 10,001–15,000 | 1,593.00 |
| 15,001–20,000 | 2,124.00 |
| 20,001–30,000 | 3,186.00 |
| 30,001–40,000 | 4,248.00 |
| Greater than 40,000 | 5,310.00 |

[2]Nev. Const., art. 1, § 8; U.S. Const. amend. XVI, § 1.

[3]It was asserted by Edwards' counsel at oral argument that Edwards would have modified his method of sales in order to qualify as a solicitor had he known how to do so without violating RMC § 4.40.010. This contention is not supported by the record.

distinction between peddlers and solicitors contained in RMC § 4.40.010 does not violate the equal protection guarantees found in article 4, section 21 of the Nevada Constitution and in the Fourteenth Amendment to the U.S. Constitution. An ordinance such as RMC § 4.40.010 necessarily must be reasonable in its classification and such classification must be rationally related to the objective sought to be accomplished. McDonald v. Board of Election, 394 U.S. 802 (1969). "Similarly, it has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it." Allied Stores of Ohio v. Bowers, 358 U.S. 522, 528 (1959).

We find a rational distinction between peddlers and solicitors explained as follows:

> There has grown up a drummer or commercial traveler class which is entirely different from the peddler class, and the distinction has been recognized and respected. The difference between the two classes is easy to state in terms of the mischievous situation to be remedied by legislative regulation of peddlers. Those soliciting orders for future delivery almost universally do so for reliable solvent principals, and, furthermore, the buyer has a period of time before delivery and payment within which to discover and rescind for fraud.

60 Am.Jur.2d *Peddlers, Solicitors, Etc.* § 10 (1972). (Footnotes omitted.) Oftentimes, a peddler who carries his wares with him cannot be traced after a sale; thus, peddlers present a greater opportunity for fraudulent sales. However, a solicitor often has some ties to an existing entity; there is a lesser chance for fraud. Therefore, any excess license fee paid by a peddler may be allocated to increased police activity necessary to prevent fraud by peddlers. Because we can reasonably conceive of a state of facts to support the distinction between peddlers and solicitors that is rationally related to a legitimate government purpose, no equal protection guarantees are violated.

Under a due process theory, Edwards also contends that the classification contained in RMC § 4.40.010 is unconstitutional. We conclude that this argument is misplaced. Pursuant to the power to regulate to protect the public's health, safety, welfare and morals, a city may regulate peddlers and solicitors and may go so far as to prohibit both without infringing on due process rights. *See* Breard v. Alexandria, 341 U.S. 622 (1951). Therefore, regulations affecting peddlers and solicitors do not violate due process rights. Edwards is clearly attacking the classification

made, and this argument is more properly made under an equal protection theory. We have already concluded that the equal protection challenge must fail.

As to Edwards' claim that the difference in license fees violates the Nevada constitutional guarantee of uniform assessment and taxation, the distinction between peddlers and solicitors does not violate this mandate. There is no dispute that all assessment and taxation rates in Nevada shall be uniform and equal. Nev. Const., art. 10, § 1. Any statute or ordinance that seeks to classify persons or businesses and, then, treats those classifications differently for purposes of taxation comports with the Nevada Constitution only if the classification is reasonable and not arbitrary. *See* Boyne v. State ex rel. Dickerson, 80 Nev. 160, 390 P.2d 225 (1964). The classification of peddlers and solicitors is not arbitrary or unreasonable. Peddlers generally carry their wares with them and have no fixed place of business in the community; therefore, it is quite possible that peddlers may avoid taxation completely but for the license fee. However, solicitors tend to have some ties to a community; these ties make them susceptible to taxes other than the license fee. Thus, there is an identifiable difference between peddlers and solicitors which justifies the difference in fees.

Finally, we conclude that the license fee imposed on peddlers is not an impermissible burden on interstate commerce. It is clear that not all burdens on interstate commerce are forbidden; only those burdens which are undue or discriminatory are forbidden. *See* Nippert v. Richmond, 327 U.S. 416 (1946). The United States Supreme Court has made a clear distinction between those persons who solicit orders for goods to be shipped later and those persons who deliver goods at the time an order is taken. In the former case, if the goods are to be shipped in interstate commerce, any license tax imposed on the solicitor is an impermissible burden on interstate commerce. *See Nippert,* above; *see also* Robbins v. Shelby Taxing District, 120 U.S. 489 (1887). However, in the latter case (order and delivery in the same transaction), license taxes have been held to be permissible burdens upon interstate commerce. One such case, Caskey Baking Co. v. Virginia, 313 U.S. 117 (1941), is illustrative. In *Caskey Baking,* appellant manufactured bread and carried it by truck across state lines. The truck drivers would stop at regular locations, and the bread would be delivered at the time the customer placed the order. The United States Supreme Court held that it was not the transporting of the bread that was taxed, but, rather, that "[t]he

purely local business of peddling'' was the activity being taxed or licensed. *Id.* at 119. Thus, so long as there is no discrimination between residents and non-residents, no impermissible burden on interstate commerce was imposed by the license fee because the tax was on a purely local activity. *Id. See also* Wagner v. City of Covington, 251 U.S. 95 (1919); Emert v. Missouri, 156 U.S. 296 (1895); Machine Co. v. Gage, 100 U.S. 676 (1880). No impermissible burden is placed on interstate commerce by RMC § 4.40.010.

We do, however, conclude that the district court erred in awarding $6,690.60 to the City on its counterclaim. The evidence shows that Edwards was in Reno peddling goods on one occasion. Edwards admitted as much in his deposition.[4] It was the position of the City that Edwards and each of his salespeople were responsible for their own license fee. The City cannot exact license fees for the salespeople from Edwards if those salespeople are not parties to this action. However, because Edwards sold goods without a license, he is liable for the license fee of $318.60.

Accordingly, for the reasons set out above, we affirm the decision of the district court that RMC § 4.40.010 is constitutional, and we reverse the judgment on the City's counterclaim of $6,690.60 with instructions to the district court to enter judgment in the amount of $318.60 on the counterclaim.

---

[4]At page 28 of Edwards' deposition contained in the record on appeal is the following:

> Q. [By Mr. Chirila] Have you or any of the children who work for you sold your products in Reno?
> A. [By Mr. Edwards] I was in Reno once.