STARLETS INTERNATIONAL, INC., AND ELIZABETH CATTONAR, APPELLANTS, v. PAUL J. CHRISTENSEN, WILLIAM U. PEARSON, JAY BINGHAM, THALIA DONDERO, KAREN HAYES, MANNY CORTEZ, BRUCE WOODBURY, IN THEIR CAPACITY AS CLARK COUNTY COMMISSIONERS; JOHN MORAN, IN HIS CAPACITY AS SHERIFF OF CLARK COUNTY, NEVADA, AND IN HIS CAPACITY AS CHAIRMAN OF THE LAS VEGAS METROPOLITAN POLICE DEPARTMENT, AND NED SOLOMON, IN HIS CAPACITY AS DIRECTOR OF BUSINESS LICENSES, RESPONDENTS.

No. 19802

November 28, 1990                    801 P.2d 1343

*James L. Buchanan, II,* Las Vegas, for Appellants.

*Rex Bell,* District Attorney, and *S. Mahlon Edwards,* Deputy District Attorney, Clark County, for Respondents.

## OPINION

*Per Curiam:*

### Facts

This case represents another episode in Clark County's efforts to control prostitution. The business of illegal prostitution in Clark County has proved to be resilient, resourceful and persistent. The County banned "escort services" in 1986 after determining that they were merely operating pseudonyms for prostitution. The County thereafter adopted bill number 10-87-2—an amendment to Title 6 of the Clark County Code—in response to the chameleonic transformation of the prohibited businesses from escort services to "outcall entertainment."[1]

In August, 1988, appellants Starlets International—an outcall promoter[2]—and Elizabeth Cattonar—an entertainer[3]—filed a complaint asking for a temporary restraining order and preliminary and permanent injunctions enjoining the County from enforcing the ordinance. Appellants also sought to have the ordinance

---

[1]The ordinance, adopted in part as Clark County Code § 6.140.010, reads as follows:

> The escort business then instituted a new business method, by obtaining promoter's licenses and offering in response to a telephone call, what they purported to be "entertainment." Police undercover activities have established that these promoters are actually operating as modified brothels, sending individuals to hotel and motel guestrooms for the purpose of prostitution under the subterfuge of "entertainment. . . ." The purpose of the ordinance codified in this chapter is to regulate the outcall entertainment business to the end that many types of criminal activities will be curtailed, without defacto prohibiting or curtailing protected expression. This chapter represents a balancing of legitimate ends of the community by imposing an incidental, content neutral place, time and manner regulation on the outcall promoter business, without limiting alternative avenues of communication, and at the same time, requiring the business to carry its share of financing law enforcement activities.

[2]§ 6.140.020 (c) and (i) define the relevant terms as follows:

> (c) "Outcall" means the business procedures whereby one person is sent or referred to a hotel or motel guestroom by another person or business entity for a fee, in response to a telephone request for said referral for entertainment purposes.
>
> . . . .
>
> (i) "Outcall promoter" means a person or business entity holding him, her or itself out as a source of outcall entertainers or one who engages in the business of providing outcall entertainment for a fee.

[3]Subsection (f) of § 6.140.020 defines "entertainer" thusly:

> "Entertainer" means the person referred by the outcall entertainment business entity to visit the hotel or motel guestroom of a patron for a fee.

declared unconstitutional. Respondents filed a NRCP 12(b)(5) motion to dismiss, and the district court, treating the motion as one for summary judgment, granted judgment favoring the County.

## Discussion

A legislative enactment is presumed to be constitutional absent a clear showing to the contrary. Westinghouse v. Dept. of Taxation, 101 Nev. 184, 698 P.2d 866 (1985); Allen v. State, Pub. Emp. Ret. Bd., 100 Nev. 130, 676 P.2d 792 (1984); List v. Whisler, 99 Nev. 133, 660 P.2d 104 (1983). Appellants failed to satisfy their heavy burden.

Appellants contend that the ordinance creates an arbitrary and capricious classification that violates equal protection of the law, deprives them of due process and their freedom of association.

### 1. *Equal Protection*

Appellants argue that the ordinance unconstitutionally distinguishes between outcall promoters providing services to hotels and motels and other "outcall promoters" in three aspects: (1) the distinction creates a discriminatory tax; (2) the distinction is arbitrary; and (3) the classification results in discriminatory treatment.

Because the ordinance does not affect fundamental rights, a deferential standard of review applies to our analysis.[4] Chapter 6.140 will therefore satisfy equal protection requirements if there is a rational basis for the differing classifications established by the ordinance. *Allen,* 100 Nev. at 136, 676 P.2d at 795-96; City of New Orleans v. Dukes, 427 U.S. 297 (1976).[5] In Edwards v.

---

[4]Even under a strict scrutiny approach, classifications involving fundamental rights will be valid if there is a substantial government interest that cannot be achieved by a less restrictive means. Schad v. Mt. Ephraim, 452 U.S. 61, 70 (1981), discussing Village of Schaumburg v. Citizens for a Better Environ., 444 U.S. 620, 637 (1980). Moreover, even fundamental rights may not be exercised "at all times and places or in any manner that may be desired." *See* Heffron v. Int'l Soc. For Krishna Consc., 452 U.S. 640, 647 (1981).

Because Chapter 6.140 was enacted pursuant to a substantial governmental interest, the classification was proper in time, place and manner of restriction. Chapter 6.140 would therefore most probably pass constitutional muster even if we were to apply a strict scrutiny standard of review.

[5]If, as here, there is no fundamental right involved, the court is "left with the rather benign and deferential prospect of scrutinizing the challenged legislation for foundational support containing an ingredient of rational basis." *Allen,* 100 Nev. at 136, 676 P.2d at 795-96.

City of Reno, 103 Nev. 347, 742 P.2d 486 (1987), this court concluded that there was a valid, rational basis for distinguishing between door-to-door peddlers and door-to-door solicitors. *Id.* at 351, 742 P.2d at 488-89. After a number of findings on how the two businesses were conducted, the City of Reno placed a higher licensing fee on peddlers than solicitors. We concluded that the City's determination that peddlers were more likely to defraud customers than solicitors was reasonable. *Id.* Similarly, in applying the deferential standard to Chapter 6.140, we are persuaded that the classification is reasonable. The ordinance regulates the outcall promotion business in hotels and motels where it was found to function primarily as a pretext for prostitution. Clark County Code § 6.140.010. Thus, the ordinance merely provides Clark County with a weapon against prostitution. We hold the ordinance is reasonably and rationally related to a legitimate government interest.

## 2. *Rights of Association*

In Techtow v. City Council of North Las Vegas, 105 Nev. 330, 775 P.2d 227 (1989), we invalidated part of an ordinance requiring massage parlors to keep records of the names of patrons open for inspection because it violated the patrons' rights to privacy and association. *Id.* at 334, 775 P.2d at 230-31. We there concluded that the requirement would deter law abiding people from seeking a legitimate massage. *Id.* at 335, 775 P.2d at 231. Moreover, the ordinance provided less obtrusive and equally effective alternatives for monitoring and preventing prostitution. We accordingly determined that the requirement infringed "too far on the rights of privacy and association." *Id.*

The same concerns are not present in this case. Unlike massage parlors, the problem of controlling prostitution in outcall promotion does not occur on business premises. Rather, prostitution occurs within the privacy of hotel or motel rooms. Problems of surveillance and detection are costly and difficult for law enforcement operatives in such locations. The information required by the ordinance, such as name of entertainer and name and location of patron, is designed to aid law enforcement officials in these operations.[6] Furthermore, the patron relinquishes some of his or her rights to privacy and association by voluntarily signing his or her name at the check-in desk of the hotel or motel.

Appellants have failed to show that outcall promotion in hotels and motels is anything other than a pretext for prostitution. The

---

[6]Moreover, the licensing fee requirement in the ordinance helps defray the cost in conducting the secret operations.

right to engage in prostitution or other illegal activity is not encompassed within the right of association. Even in the absence of illegal activity, the types of association protected by the constitution are less likely to be implicated within the privacy of a hotel or motel room accommodating a paid exotic entertainer and her or his patron. *See* FW/PBS v. City of Dallas, ...... U.S. ......, ......, 110 S.Ct. 596, 611 (1990).

### 3. *Due Process*

Appellants contend that Chapter 6.140 violates their due process rights. To satisfy due process, a statute "must clearly delineate the conduct it proscribes." Kev, Inc. v. Kitsap County, 793 F.2d 1053, 1057 (9th Cir. 1986), citing Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). Vague laws are unacceptable because they may entrap the innocent without sufficiently defining what is prohibited. *Kev,* 793 F.2d at 1057; Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972). Moreover, an ordinance must set forth "reasonably precise standards for law enforcement officials and triers of fact to follow." *Kev,* 793 F.2d at 1057, citing Smith v. Goguen, 415 U.S. 566, 572-73 (1974); *Grayned,* 408 U.S. at 108-09.

There can be no doubt 6.140 meets these standards. If a person provides outcall services to hotels and motels, that person must satisfy the licensing provisions of Chapter 6.140. Managers and entertainers must be similarly licensed. We conclude that the standard is both clear and not violative of due process requirements. Having previously concluded that the ordinance facilitates legitimate governmental interests, we perceive no basis for determining that appellants' rights to due process were violated by Chapter 6.140.

We have considered appellants' other issues and conclude that they are without merit.

The judgment of the district court is affirmed.