UNIVERSAL ELECTRIC, INC., Appellant, v. THE STATE OF NEVADA EX REL OFFICE OF LABOR COMMISSIONER; F.T. MACDONALD in His Capacity as Labor Commissioner; CLARK COUNTY SCHOOL DISTRICT, a Political Subdivision; BUD MAHAS CONSTRUCTION, INC., and J.A. TIBERTI CONSTRUCTION COMPANY, Respondents.

No. 22713

March 11, 1993                    847 P.2d 1372

*Orin Grossman,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, and *Louis A. Ling,* Deputy Attorney General, Carson City, for Respondents State of Nevada and Labor Commissioner.

---

[4]The Honorable David R. Gamble, Judge of the Ninth Judicial District Court, was designated by the Governor to sit in place of The Honorable John C. Mowbray, Justice. Nev. Const. art. 6, § 4.

*Donald A. Haight,* Las Vegas, for Respondent Clark County School District.

*David Rivers,* Las Vegas, for Respondent J.A. Tiberti Construction Co.

# OPINION

*Per Curiam:*

## FACTS

Universal Electric, Inc. ("Universal") was the electrical subcontractor on two Las Vegas public works projects: Cheyenne and Cimarron Memorial High Schools. In January 1991, the Nevada Labor Commissioner (the "Commissioner") received a letter from Universal electricians informing him that Universal was not paying them the correct prevailing wage.[1] The letter indicated that Universal was paying electricians $19.96 per hour when the correct prevailing wage was $27.98 per hour. A labor commission investigator interviewed four Universal electricians who confirmed the letter's contention.

On March 20, 1991, the Commissioner, relying upon NRS 338.160(5),[2] directed the Clark County School District, which

---

[1]NRS 338.020 requires that laborers employed on public works projects receive the prevailing wage of the county where the project is located.

[2]NRS 338.160(5) provides:

If the labor commissioner has reason to believe that an employee has a valid and enforceable claim for wages against a contractor, he may require the public body to withhold from any payment due the contractor under this section and pay the labor commissioner instead, an

owned the projects, to retain $30,000 from payments due Universal on each project. On April 15, 1991, the Commissioner received a letter from Universal's counsel indicating that Universal was concerned about the withholdings. Universal did not, however, request a hearing.

The Commissioner increased the amount retained on May 29, 1991. For the Cheyenne project, the amount rose to $175,391.28; for the Cimarron Memorial project, the amount retained increased to $167,586.40.

Universal claimed NRS 338.160(5) was unconstitutional and sought to enjoin its application. Universal argued that the statute failed to provide even a scintilla of procedural due process, thus violating the Fourteenth Amendment. Specifically, Universal asserted that NRS 338.160(5) provided no mechanism to allow an affected contractor to challenge a retention.

Finding Universal's chance of prevailing on the merits negligible at best, the district court refused to enjoin the application of NRS 338.160(5) or to release the monies withheld. Universal posted supersedeas bonds to obtain release of the payments due. This appeal followed. We conclude that the legislature clearly envisioned a hearing would be held promptly following an NRS 338.160(5) retention. Accordingly, we affirm the ruling of the district court and hold that NRS 338.160(5) is constitutional.

## DISCUSSION

Legislation is presumed constitutional absent a clear showing to the contrary. Starlets International v. Christensen, 106 Nev. 732, 735, 801 P.2d 1343, 1344 (1990). A party attacking a statute's validity is faced with a formidable task.

> In case of doubt, every possible presumption will be made in favor of the constitutionality of a statute, and courts will interfere only when the Constitution is clearly violated. Further, the presumption of constitutional validity places upon those attacking a statute the burden of making a clear showing that the statute is unconstitutional.

List v. Whisler, 99 Nev. 133, 137, 660 P.2d 104, 106 (1983) (citations omitted).

"A fundamental requirement of due process is 'the opportunity

---

amount equal to the amount claimed by the employee. This amount must be paid to the employee if the claim is resolved in his favor, otherwise it must be returned to the public body for payment to the contractor.

to be heard.'" Armstrong v. Manzo, 380 U.S. 545, 552 (1965) (citing Grannis v. Ordean, 234 U.S. 385 (1914)). We hold that this requirement is satisfied by the Labor Commissioner's Practice Rules, which provide in part:

> If, from the complaint or from other official records of the commissioner, it appears that the charges may be well founded, the commissioner will send written notice to the person charged at least 14 days before the date fixed for the hearing. The notice must itemize the charges and set forth the date of the hearing.

NAC 607.200(3).

The Commissioner would not have ordered the monies otherwise due Universal withheld absent a finding that the electricians' complaints were "well founded." Upon making this determination, the Commissioner should have set a hearing date and notified Universal of this decision. This the Commissioner failed to do. However, the Commissioner's failure to abide by his practice rules does not render the enabling statute unconstitutional. *See* Tiffany By and Through Tiffany v. Arizona Interscholastic Ass'n, Inc., 726 P.2d 231 (Ariz.Ct.App. 1986) (administrative agency's failure to follow its own rules and regulations does not create constitutional due process right on behalf of party who suffers wrong at hand of such agency).

At a minimum, Universal should have demanded that the Commissioner adhere to NAC 607.200. This may have been accomplished by a simple request. We do not know, however, because Universal never sought a hearing. Instead, Universal sought to have NRS 338.160(5) declared unconstitutional.

We agree that NRS 338.160(5) could have been worded more precisely: "shall" would have been more prudent than "may." Nevertheless, a statute constitutionally defective for failing to provide a hearing may be cured by administrative regulations. Polyvend, Inc. v. Puckorious, 395 N.E.2d 1376, 1384 (Ill. 1979) (Clark, J., concurring) (citing Bell v. Burson, 402 U.S. 535, 542-43 (1972)). As already discussed, NAC 607.200(3) does provide for notice and hearing.

In addition, we hold that the hearing provided by NAC 607.200(3) must be held promptly following a retention made pursuant to NRS 338.160(5). In any event, absent a showing of good cause for delay, the aggrieved party must be provided a prompt hearing following the retention.

We note that the dissent lauds the legislature for passing NRS

338.160(5), and acknowledges in effect that harm can come to Nevada's laborers without it. However, acceptance of the dissent's strict construction of NRS 338.160(5) would thwart the legislature's clear purpose in passing that section. Accordingly, we adhere to the rule of statutory construction that the intent of a statute will prevail over the literal sense of its words. McKay v. Bd. of Supervisors, 102 Nev. 644, 650, 730 P.2d 438, 443 (1986).

## CONCLUSION

We hold that any alleged constitutional infirmity of NRS 338.160(5) is cured by NAC 607.200(3). We therefore affirm the ruling of the district court.[3]

ROSE, C. J., STEFFEN and SPRINGER, JJ., and ZENOFF, SR. J.,[4] concur.

YOUNG, J., dissenting:

Respectfully, I dissent.

Although I agree with the majority's holding that an administrative regulation can in some instances cure a constitutionally defective statute, I disagree with the majority's conclusion that NAC 607.200 cures NRS 338.160(5).

The majority correctly recognizes that due process requires, at a minimum, an opportunity to be heard. For this proposition, the majority cites Armstrong v. Manzo, 380 U.S. 545 (1965). That opinion goes on to say, however, that the opportunity to be heard "is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong*, 380 U.S. at 552.

Neither NRS 338.160(5) nor NAC 607.200 provides an affected party a hearing. The majority holds that NAC 607.200(3) does provide an affected contractor a hearing, and that this hearing must be held promptly following a retention.. As the case at bar illustrates, this is not the understanding of the Commissioner, who, even by the time of oral argument, had failed to hold a hearing in this matter.

Even were a hearing provided, NRS 338.160(5) is nonetheless defective because the hearing need not be provided within a meaningful time (as evidenced by the case at hand). At some

---

[3]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.

[4]THE HONORABLE CHARLES E. SPRINGER, in his former role of Vice-Chief Justice, appointed THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE JOHN C. MOWBRAY, Chief Justice, now retired. Nev. Const. art. 6, § 19; Supreme Court Rule 10.

point in time, failure to conduct a post-deprivation[1] hearing becomes a constitutional violation. *See* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985). The deprivation now facing Universal could be perpetual.

In Barry v. Barchi, 443 U.S. 55 (1979), the United States Supreme Court addressed the requisites of a post-deprivation hearing. Barchi, a horse trainer, was accused of allowing his horse to be drugged. Under the statutory scheme, this could result in a license suspension; the New York State Racing and Wagering Board suspended Barchi's license for fifteen days. Barchi was entitled to a post-suspension hearing, but the statute specified no time in which this hearing was to be held. Rather than pursue the hearing, Barchi filed suit alleging that the scheme violated due process. *Barry,* 443 U.S. at 57-61.

The Court recognized that the summary suspension did not affront due process. *Id.* at 63. It concluded, however, that due process was violated because "the provision for an administrative hearing, neither on its face nor as applied in this case, assured a prompt proceeding and prompt disposition of the outstanding issues between Barchi and the State. . . . Once suspension has been imposed, the trainer's interest in a speedy resolution of the controversy becomes paramount . . . ." *Id.* at 66.[2]

Even if NAC 607.200 does mandate a hearing, the hearing could be any time, perhaps never. In this case, for instance, the initial deprivation was imposed in March 1991. Now, nearly two years later, there has been no hearing and the issue remains unresolved. Although it may be argued that Universal has yet to suffer a final deprivation, it has surely suffered, and continues to suffer, an injury. An indeterminate deprivation of this sort is intolerable.

I appreciate the burden the Commissioner would face if required to promptly grant hearings. Indeed, our state's current fiscal situation would probably prevent the Commissioner from hiring the personnel necessary to investigate and preside over the necessary hearings. I also applaud the legislature for its resolve in passing this laudatory legislation and attempting to protect the workers of this state from less than scrupulous employers.

Nonetheless, as it stands, the entire burden is now borne by a

---

[1] Universal concedes that due process does not require a hearing prior to an NRS 338.160(5) retention.

[2] A distinguishing factor between *Barry* and the instant case is that trainers such as Barchi had "no opportunity to put the State to its proof until they [had] suffered the full penalty imposed." *Barry,* 443 U.S. at 66. Universal, on the other hand, can *probably* obtain some sort of review somewhere along the line. The problem, however, is that we do not know when.

perhaps innocent subcontractor, with no relief in sight. In short, due process is not satisfied by the current regulatory scheme. For this reason, I dissent.