133 Nev., Advance Opinion 10

# IN THE SUPREME COURT OF THE STATE OF NEVADA

WESTERN CAB COMPANY,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
LINDA MARIE BELL, DISTRICT
JUDGE,
Respondents,
     and
LAKSIRI PERERA; IRSHAD AHMED;
AND MICHAEL SARGEANT,
INDIVIDUALLY AND ON BEHALF OF
OTHERS SIMILARLY SITUATED,
Real Parties in Interest.

No. 69408

FILED

MAR 16 2017



ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging the constitutionality and applicability of Nevada's minimum wage constitutional amendment.

*Petition denied.*

Hejmanowski & McCrea, LLC, and Malani L. Kotchka, Las Vegas,
for Petitioner.

Leon Greenberg Professional Corporation and Leon Greenberg, Las Vegas,
for Real Parties in Interest.

Mark R. Thierman, Joshua D. Buck, Michael Balaban, and Christian Gabroy, Reno,
for Amicus Curiae Nevada National Employment Lawyers Association.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Don Springmeyer and Bradley Schrager, Las Vegas,
for Amicus Curiae Progressive Leadership Alliance of Nevada.

17-8814

BEFORE THE COURT EN BANC.[1]

*OPINION*[2]

By the Court, CHERRY, C.J.:

Article 15, Section 16 of the Nevada Constitution, commonly known as the Minimum Wage Amendment (MWA), guarantees a base wage to Nevada workers. Under the MWA, if an employer provides health benefits, it may pay its employees a lower minimum wage than if no such health benefits are provided. The MWA itself defines health benefits, and the applicable Nevada Administrative Code provisions define health insurance.

In this petition for extraordinary relief, petitioner Western Cab Company (Western) asks this court to consider whether the MWA is federally preempted by either the National Labor Relations Act (NLRA) or the Employee Retirement Income Security Act of 1974 (ERISA) and whether the MWA is unconstitutionally vague. We hold that the MWA is not preempted by the NLRA because the MWA does not usurp the function of the National Labor Relations Board (Labor Board), nor does it intrude upon areas that the United States Congress intended to leave open to the free market, as minimum wage laws are within a state's police powers. The MWA is similarly not preempted by ERISA because it neither references nor connects with ERISA for preemption purposes.

---

[1]The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.

[2]On June 2, 2016, a panel of this court granted petitioner's motion for a stay of the proceedings below pending resolution of this petition. We now lift that stay upon the filing of this opinion.

 

Further, the MWA is not unconstitutionally vague because an employer is sufficiently on notice of what benefits it must provide to qualify for the lower wage and the MWA does not promote arbitrary or discriminatory enforcement. Accordingly, we conclude that the MWA is valid and deny the instant petition for a writ of mandamus or prohibition.

## FACTS AND PROCEDURAL HISTORY

In 2004 and 2006, the people of Nevada passed Question 6 to amend the Nevada Constitution, adding the MWA. The MWA requires employers to pay their employees one of two possible wage rates, depending on whether the employer offers qualifying health benefits. Nev. Const. art. 15, § 16(A). The MWA allows for an exception to both of these requirements, however, if the employer and employees agree to a lower wage in clear and unambiguous terms through collective bargaining. Nev. Const. art. 15, § 16(B).

In 2012, petitioner Western began requiring its drivers to pay for fuel directly instead of deducting fuel costs from the drivers' paychecks. Real parties in interest Laksiri Perera, Irshad Ahmed, and Michael Sargeant, who formerly drove cabs for Western, filed a complaint against Western alleging, among other things, that when the fuel costs are considered, drivers' wages fall below the constitutionally mandated minimum. Western moved to dismiss the complaint. It claimed, among other things, that not only should fuel costs not be considered when calculating the minimum wage, but the MWA itself is invalid because it (1) is preempted by the NLRA, (2) is preempted by ERISA, and (3) is unconstitutionally vague. The district court denied Western's motion on each of the aforementioned grounds, and Western now petitions this court for extraordinary writ relief.

## DISCUSSION

The issues that we are asked to address are as follows: (1) whether the NLRA preempts the MWA; (2) whether ERISA preempts the MWA; (3) whether the MWA is void for vagueness; and (4) whether, assuming the MWA is valid, fuel costs should be factored into calculating minimum wage compliance. After concluding that our immediate review is warranted, we exercise our discretion to address the validity of the MWA and conclude that it is valid under all three challenges. We decline to exercise our discretion regarding the fuel-calculation issue because that issue depends upon facts that must be developed in the district court.

*Considering the facial challenges to the MWA serves the interests of judicial economy and streamlines this case, along with other MWA-related cases currently pending in the district courts*

"A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (footnote omitted); *see* NRS 34.160. "A writ of prohibition may be warranted when a district court acts without or in excess of its jurisdiction." *Manuela H. v. Eighth Judicial Dist. Court*, 132 Nev., Adv. Op. 1, 365 P.3d 497, 500 (2016); *see* NRS 34.320. The decision to entertain an extraordinary writ petition lies "within this court's discretion." *Libby v. Eighth Judicial Dist. Court*, 130 Nev., Adv. Op. 39, 325 P.3d 1276, 1278 (2014). This court generally refuses to issue an extraordinary writ when there is a "plain, speedy and adequate remedy in the ordinary course of law." *Oxbow Constr., LLC v. Eighth Judicial Dist. Court*, 130 Nev., Adv. Op. 86, 335 P.3d 1234, 1238 (2014) (internal quotation marks omitted); *see* NRS 34.170; NRS 34.330.

SUPREME COURT
OF
NEVADA

(O) 1947A

"Generally, we will not exercise our discretion to consider writ petitions challenging district court orders denying motions to dismiss, unless pursuant to clear authority under a statute or rule, the district court is obligated to dismiss an action . . . or an important issue of law requires clarification." *Moseley v. Eighth Judicial Dist. Court*, 124 Nev. 654, 658, 188 P.3d 1136, 1140 (2008) (internal quotation marks omitted). The policy behind our hesitation to entertain writ petitions that challenge such orders is to promote judicial economy and avoid "piecemeal appellate review." *Wells Fargo Bank, N.A. v. O'Brien*, 129 Nev. 679, 680, 310 P.3d 581, 582 (2013). As a general principle, we practice judicial restraint, avoiding legal and constitutional issues if unnecessary to resolve the case at hand. *Miller v. Burk*, 124 Nev. 579, 588-89, 188 P.3d 1112, 1118-19 (2008). We may, however, use our discretion to consider writ petitions "when . . . judicial economy is served by considering the writ petition." *Renown Reg'l Med. Ctr. v. Second Judicial Dist. Court*, 130 Nev., Adv. Op. 80, 335 P.3d 199, 202 (2014).

The instant petition seeks reversal of a denial of a motion to dismiss. Although we typically deny such petitions, considering this petition would serve judicial economy and clarify an important issue of law. Three of the four substantive issues in the petition deal with invalidating the MWA. If the MWA is invalid, then the drivers (along with plaintiffs in many other pending cases) have no cause of action.

The petition also asks this court to interpret the MWA and determine whether fuel costs may be deducted from drivers' wages when checking for compliance with the MWA. However, this issue depends upon facts that are not in the record, particularly whether Western and its drivers agreed to the fuel payment system. If so, the collective bargaining

exception in the MWA may apply, such that the fuel payment system cannot result in a violation of the MWA. Accordingly, we conclude that unresolved factual matters preclude consideration of the fuel-calculation issue at this stage.

Resolution of the constitutional and preemption issues raised in the petition could dispose of the litigation below along with other MWA cases, and those issues require no additional fact-finding. Accordingly, we will exercise our discretion and consider the constitutional and preemption issues.

*The NLRA does not preempt the MWA because minimum wage laws are part of the State's police powers*

Western claims that the purpose of the MWA is to help unions and unionized employers compete with nonunionized employers, and therefore, it violates the equitable bargaining process protected by the NLRA, resulting in NLRA preemption. We disagree.

We review whether a federal law preempts a state law de novo because it is a question of law. *Cervantes v. Health Plan of Nev., Inc.*, 127 Nev. 789, 792-93, 263 P.3d 261, 264 (2011). "[P]re-emption should not be lightly inferred [under the NLRA], since the establishment of labor standards falls within the traditional police power of the State." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987).

Although the NLRA contains no express preemption clause, the Supreme Court of the United States has articulated two types of implied preemption. *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747-48 (1985). The first type is known as *Garmon* preemption, which protects the Labor Board's priority right to initially determine what is or is not regulated under the NLRA. *Id.* at 748 (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959)).

> "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law."

*Rosner v. Whittlesea Blue Cab Co.*, 104 Nev. 725, 726 n.1, 766 P.2d 888, 888 n.1 (1988) (quoting *Garmon*, 359 U.S. at 244). Since *Garmon*, we have recognized that

> "[t]he critical inquiry . . . is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board."

*Id.* at 727, 766 P.2d at 889 (quoting *Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978)). In summary, unless a complaint is the kind that a worker should present to the Labor Board, it is not preempted under *Garmon*. *Id.* The other type of NLRA preemption, known as *Machinists* preemption, prohibits states from regulating conduct that Congress intended to leave open for the free market to determine. *Metro. Life Ins.*, 471 U.S. at 750 (citing *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132 (1976)).

"When a state law establishes a minimal employment standard not inconsistent with the general legislative goals of the NLRA, it conflicts with none of the purposes of the Act." *Fort Halifax Packing,*

Supreme Court
OF
Nevada

(O) 1947A

7

482 U.S. at 21 (quoting *Metro. Life Ins.*, 471 U.S. at 757). Such laws do not compel or preclude negotiation, but merely provide a "backdrop" for negotiations. *Id.* (internal quotation marks omitted). The Supreme Court has concluded that

> the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for "there is nothing in the NLRA ... which expressly forecloses all state regulatory power with respect to those issues ... that may be the subject of collective bargaining."

*Id.* at 21-22 (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504-05 (1978)). Minimum wage laws are an authorized use of a state's police power, *MGM Grand Hotel-Reno, Inc. v. Insley*, 102 Nev. 513, 518, 728 P.2d 821, 824 (1986), and thus are not preempted under the NLRA. Because the MWA neither requires nor prohibits collective bargaining or any other activities protected under the NLRA, we conclude that the MWA is not preempted under *Garmon*.

The MWA is not preempted under *Machinists* either. As the Supreme Court of the United States stated in *Metro Life Insurance*, and we recognized in *MGM Grand Hotel-Reno*, minimum wage laws, such as the MWA, are within a state's police powers. Moreover, the MWA allows employers and employees to collectively bargain around the minimum wage requirements, therefore, as in *Fort Halifax Packing*, the case for validity here is strong. Not only does the MWA not enter a field occupied by the NLRA, it explicitly allows the NLRA priority.[3] Because the MWA

---

[3]Western cites numerous cases as examples of NLRA preemption, but each of those cases dealt with laws that actually affected rights under the NLRA. *See, e.g., Chamber of Commerce of the U.S.A. v. Brown*, 554

*continued on next page...*

neither intrudes upon collective bargaining nor areas intentionally left unregulated, it is not preempted by the NLRA.

*ERISA does not preempt the MWA because the MWA does not affect the types of benefits an employer must provide or force employers to provide benefits at all*

Western argues that ERISA was designed to cover the field of employee benefits and, therefore, any state regulation of benefits or anything related thereto is preempted. We disagree.

When starting an ERISA preemption analysis, courts should presume "that Congress [did] not intend to supplant state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). ERISA's purpose is to protect employee benefit plan participants and set forth specific judicial remedies if necessary. *Cervantes*, 127 Nev. at 793, 263 P.3d at 264-65. ERISA contains a preemption clause that makes clear that regulation of employee benefit plans must remain an exclusively federal matter. *Id.* at 793-94, 263 P.3d at 265. ERISA's preemption clause provides that, with limited exceptions, its provisions "shall supersede any and all State laws insofar as they may

---

*...continued*
U.S. 60, 62, 66 (2008) (holding that California law prohibiting employers that received state funds from using those funds to either promote or deter union organization was preempted by NLRA); *Golden State Transit Corp. v. City of L.A.*, 475 U.S. 608, 619 (1986) ("[A] city cannot condition a franchise renewal in a way that intrudes into the collective-bargaining process."); *Chamber of Commerce of the U.S. v. Bragdon*, 64 F.3d 497, 502 (9th Cir. 1995) (holding that ordinance that set "specific minimum wages and benefits to be paid to" employees of individual crafts or job types impermissibly affected the bargaining process). None of these examples are applicable in this case because, unlike the MWA, they all dealt with laws that had an actual effect on collective bargaining. The MWA, however, creates a minimum wage standard that applies to all employers.

SUPREME COURT
OF
NEVADA

(O) 1947A

now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (2009).

Although the Supreme Court of the United States once held that ERISA's preemption clause was "deliberately expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987), it has since narrowed the scope, holding that to preempt every law that incidentally mentions ERISA plans would be too far overreaching. *See Travelers*, 514 U.S. at 655 ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course . . . ."). A court should look to ERISA's objectives to determine whether a state law is the type that Congress intended to preempt. *Id.* at 656. A court should also look "to the nature of the effect of the state law on ERISA plans." *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997). As a result, the Supreme Court has explained, and we have recognized, that "relates to" means that a state law "has a connection with or . . . reference to" an ERISA plan. *Cervantes*, 127 Nev. at 795, 263 P.3d at 266 (quoting *Dillingham*, 519 U.S. at 324).

"It is well settled that wages are a subject of traditional state concern, and are not included in ERISA's definition of employee welfare benefit plan. Thus, regulation of wages per se is not within ERISA's coverage." *WSB Elec., Inc. v. Curry*, 88 F.3d 788, 791 (9th Cir. 1996) (internal quotation marks omitted). A minimum wage law could, however, be preempted by ERISA if the law "refers to, or has a connection with, employee welfare benefit plans." *Calop Bus. Sys., Inc. v. City of L.A.*, 984 F. Supp. 2d 981, 1002 (C.D. Cal. 2013).

*The MWA does not refer to employee welfare benefit plans for the purposes of ERISA preemption*

A state law refers to "an ERISA plan when it 'acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation.'" *Cervantes*, 127 Nev. at 795, 263 P.3d at 266 (quoting *Dillingham*, 519 U.S. at 325). State laws do not refer to ERISA plans for the purposes of preemption, however, when they merely "mention[ ] a covered employee welfare benefit plan" or if the law's "text include[s] the word ERISA." *WSB Elec.*, 88 F.3d at 793.

Regarding minimum wage laws, the United States District Court for the Central District of California recently determined that a two-tiered minimum wage law, strikingly similar to the MWA, does not refer to ERISA plans for preemption purposes. *Calop*, 984 F. Supp. 2d at 1002-03. In *Calop*, an employer claimed that Los Angeles' two-tiered living wage ordinance (LWO) referenced ERISA, therefore, it was preempted. *Id.* at 1000. The court recognized that because the scope of ERISA preemption has become limited to state laws that have an actual effect on ERISA plans, the LWO did not refer to ERISA plans for the purposes of preemption. *Id.* at 1005; *see also WSB Elec.*, 88 F.3d at 793-94 (holding that because California's prevailing wage law mentioned ERISA benefits but did "not force employers to provide any particular employee benefits or plans, to alter their existing plans, or to even provide ERISA plans or employee benefits at all," the law did not refer to ERISA and was, therefore, not preempted by it). We agree with the analysis in *Calop* for the purposes of determining whether the MWA is preempted.

The MWA offers employers a choice of paying a $7.25 minimum wage if it offers qualifying health benefits or an $8.25 minimum wage if it chooses not to offer them. Like in *Calop*, employers are not

forced to provide any benefits at all. Moreover, qualifying benefits may be those "that are generally deductible by an employee on his individual federal income tax return," NAC 608.102(1)(a), or "[p]rovide[ ] health benefits pursuant to a Taft-Hartley trust which . . . [q]ualifies as an employee welfare benefit plan [either]: (I) [u]nder the guidelines of the Internal Revenue Service; [or] (II) [p]ursuant to" ERISA, NAC 608.102(1)(b)(2). Finally, even if the employer chooses to offer benefits and chooses to offer those benefits consistent with ERISA plans, the MWA does not alter what the ERISA plan offers.

Accordingly, neither the MWA nor its regulation pursuant to NAC 608.102(1) has an effect on ERISA plans. Therefore, we conclude that the MWA does not refer to ERISA for preemption purposes.

*The MWA does not impermissibly connect with ERISA plans*

A state law impermissibly connects with ERISA plans when it "mandate[s] employee benefit structures or their administration." *Cervantes*, 127 Nev. at 796, 263 P.3d at 266 (internal quotation marks omitted). We have adopted the Ninth Circuit's four-factor test to determine "whether a state law has a connection with ERISA plans." *Id.* (internal quotation marks omitted). The four factors are:

> "(1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;
>
> (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;
>
> (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and

> (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee."

*Id.* at 796, 263 P.3d at 266 (quoting *Operating Eng'rs Health & Welfare Tr. Fund v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir. 1998)).

Like *Calop*, the MWA does not regulate the type of benefits that an employer must provide to qualify for the lower minimum wage, nor does it require an employer to provide benefits at all. The MWA merely provides that to qualify for the lower minimum wage, the employer must provide health insurance at a cost to the employee of no more than ten percent of the employee's gross taxable income. Second, the MWA does not require employers to establish or maintain any benefits plan. Third, the MWA does not impose any reporting requirements on employers. Finally, the ultimate choice of whether to provide benefits rests solely with the employers. Accordingly, because none of the four factors have been offended, we conclude that the MWA does not impermissibly connect with ERISA plans. Moreover, because it neither connects with nor refers to ERISA plans, we hold that the MWA is not preempted by ERISA.

*The MWA is not unconstitutionally vague under the United States Constitution or the Nevada Constitution because health benefits are defined within the text of the amendment itself and the related NAC provisions define health insurance*

Western argues that the MWA, along with its related NAC provisions, is void for vagueness because a person of ordinary intelligence cannot understand what conduct is prohibited. We disagree.

We review questions of constitutional interpretation de novo. *Lawrence v. Clark Cty.*, 127 Nev. 390, 393, 254 P.3d 606, 608 (2011). Laws

"are presumed to be valid, and the burden is on the challenger to make a clear showing of their unconstitutionality." *Douglas Disposal, Inc. v. Wee Haul, LLC*, 123 Nev. 552, 557, 170 P.3d 508, 512 (2007) (internal quotation marks omitted).

"The void-for-vagueness doctrine is rooted in the Due Process Clauses of the Fifth and Fourteenth Amendments." *Carrigan v. Comm'n on Ethics*, 129 Nev. 894, 899, 313 P.3d 880, 884 (2013); *see also Edwards v. City of Reno*, 103 Nev. 347, 350, 742 P.2d 486, 488 (1987) (holding that vague laws violate the Due Process Clauses found in both the United States Constitution and the Nevada Constitution). "Civil laws are held to a less strict vagueness standard than criminal laws 'because the consequences of imprecision are qualitatively less severe.'" *Id.* (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)). "A law may be struck down as impermissibly vague for either of two independent reasons: (1) if it fails to provide a person of ordinary intelligence fair notice of what is prohibited; or (2) if it is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (internal quotations omitted).

*The MWA provides persons of ordinary intelligence fair notice of what is prohibited*

Under the first test, Western alleges that the term "health benefits" is so vague that a person of ordinary intelligence cannot understand what is prohibited. This argument is unpersuasive because "health benefits" is defined in the text of the MWA itself. The MWA defines "health benefits" as "making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Nev. Const. art. 15, § 16(A).

"Health insurance," while not explicitly defined in the text of the MWA, is defined in the applicable portions of the Nevada Administrative Code. *See* NAC 608.102(1). To qualify for the lower minimum wage, the health insurance offered must either: (1) "[c]over[ ] those categories of health care expenses that are generally deductible by an employee on his individual federal income tax return" or (2) "[p]rovide[ ] health benefits pursuant to a Taft-Hartley trust." *Id.* With the combined guidance of the MWA and NAC 608.102(1), any employer of ordinary intelligence should have adequate notice of what health benefits qualify it to pay the lower minimum wage. *See In re Discipline of Lerner*, 124 Nev. 1232, 1245, 197 P.3d 1067, 1077 (2008) (even if a term in law is vague when standing alone, we will not invalidate the law when the term's meaning is readily perceptible in light of existing authority). Accordingly, the MWA does not fail the first *Carrigan* test.

*The MWA does not authorize or encourage seriously discriminatory enforcement*

Under the second *Carrigan* test, the MWA would be vague "if it is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Carrigan*, 129 Nev. at 899, 313 P.3d at 884. Western has put forth no evidence that determining which employers qualify for the lower-tier minimum wage is likely to be enforced arbitrarily or in a discriminatory manner. There is nothing in the record to indicate that those who enforce the MWA would give unionized employers an unfair advantage over nonunion employers or act in any other discriminatory manner. The state enforcement agency would simply need to compare Western's offerings to those specified in NAC 608.102(1)

to determine whether Western qualifies for the lower minimum wage. Western fails to demonstrate that the MWA encourages arbitrary or discriminatory enforcement. Because the MWA does not fail either of the two independent *Carrigan* tests, we conclude that the MWA is not void for vagueness.

## CONCLUSION

The MWA is not preempted by either the NLRA or ERISA. The MWA is similarly not void for vagueness. Accordingly, we deny Western's petition for extraordinary relief.

_____, C.J.
Cherry

We concur:

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre