OPINION
 

 By the Court,
 

 Douglas, J.:
 

 Generally, nonsignatories to arbitration agreements have been required to arbitrate under theories of incorporation by reference, assumption, agency, alter ego, and estoppel. In this appeal, we consider whether a nonsignatory to an arbitration agreement can, nevertheless, be required to submit an oral contract dispute to arbitration. We also briefly address whether the doctrine of unclean hands should apply to bind respondent Palmer J. Swanson, Inc. (Nevada firm), to the arbitration provisions contained in the written agreements between appellant Farmers Insurance Exchange and the California-based law firm of Swanson & Antognini, d.b.a. Palmer J. Swanson, P.C. (California firm).
 

 Farmers and the California firm entered into several written agreements for the performance of legal services in California, all containing mandatory arbitration provisions. Subsequently, Farmers and the Nevada firm entered into an oral agreement for the performance of legal services in Nevada. Substantial billing disputes arose between Palmer J. Swanson, a 50-percent shareholder and director of the California firm, and Farmers regarding the performance of these services in both California and Nevada. Based on the written arbitration agreements between Farmers and the California firm, Farmers moved to compel the Nevada firm to participate in mandatory arbitration. The Nevada firm argued that it could not be compelled to participate in mandatory arbitration because it was not a party to the agreements entered into between Farmers and the California firm. The district court denied Farmers’ motion to compel arbitration, and this appeal followed.
 

 
 *632
 
 Having reviewed the record and considered the parties’ arguments, we conclude that the Nevada firm was not the alter ego of the California firm and, thus, cannot be bound to those agreements entered into by the California firm. We also conclude that the Nevada firm was not equitably estopped from refusing to comply with the arbitration agreement because it did not receive a direct benefit from the California firm’s contracts with Farmers. Finally, under the facts presented, the doctrine of unclean hands does not operate to preclude the Nevada firm from seeking judicial relief. Accordingly, we perceive no error in the district court’s order denying Farmers’ motion to compel arbitration.
 

 FACTS AND PROCEDURAL HISTORY
 

 Between December 2002 and June 2003, Farmers entered into several written agreements for the performance of legal services with the California firm. The agreements between Farmers and the California firm contained mandatory arbitration provisions and provided that any modification to the agreements had to be in writing and executed by Farmers’ commercial claims office manager.
 

 After entering into several of these agreements with the California firm, Farmers contacted Palmer J. Swanson and proposed an expansion of legal services into the state of Nevada. Swanson confirmed this proposal with Farmers’ commercial claims office manager, James Taylor. Swanson and Taylor then agreed to the expansion of legal services into Nevada by means of forming a new Nevada professional corporation. The two also agreed to an hourly rate identical to that charged by the California firm. The agreement, however, was never memorialized in writing. In light of these oral agreements, Swanson formed the Nevada firm, of which he owns 100 percent of the shares.
 

 Shortly after forming the Nevada firm, billing disputes arose between Swanson and Farmers regarding the performance of legal services in both Nevada and California. Unable to settle the billing disputes, the Nevada firm initiated the underlying lawsuit, alleging, among other things, that Farmers was in breach of an oral agreement. Farmers responded with a motion to compel arbitration. According to Farmers’ motion, arbitration was mandated by the written agreements between Farmers and the California firm because the California firm expressly agreed in writing to arbitrate its disputes and the Nevada and California firms are one and the same.
 

 In opposing Farmers’ motion, the Nevada firm maintained that arbitration was not mandated because the Nevada and California firms were separate entities and therefore the Nevada firm was not bound to any agreements entered into by the California firm. On behalf of the Nevada firm, Swanson presented evidence demonstrating that the Nevada firm had maintained an independent federal tax identification number, operated under its own bylaws, was
 
 *633
 
 supervised by a licensed Nevada attorney, and possessed an independent business license, tax license, part-time staff, phone line, insurance coverage, and office sublease agreement. Conversely, Farmers offered evidence that the Nevada firm was referenced on the résumé of the California firm.
 
 [1]
 
 After a hearing, the district court summarily denied Farmers’ motion to compel arbitration based on the pleadings and oral arguments. This appeal followed.
 
 [2]
 

 DISCUSSION
 

 The question of whether an agreement to arbitrate “exists is one of fact, requiring this court to defer to the district court’s findings unless they are clearly erroneous or not based on substantial evidence.”
 
 [3]
 
 Substantial evidence is “ ‘that which “a reasonable mind might accept as adequate to support a conclusion.” ’ ”
 
 [4]
 
 Because the district court summarily denied Farmers’ motion to compel arbitration, we focus our discussion on whether there is substantial evidence in the record to support the district court’s order.
 

 Agreement to arbitrate
 

 On appeal, Farmers argues that because the Nevada and California firms are one and the same, the written agreement to arbitrate is binding upon both firms, and thus, the district court erred in refusing to compel the Nevada firm to participate in arbitration.
 

 “Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration.”
 
 [5]
 
 However, “[i]f the court finds that there is no enforceable agreement, it may not . . . order the parties to arbitrate.”
 
 [6]
 

 The existence of a written agreement to arbitrate between Farmers and the California firm does not presumptively lead this court to the conclusion that an agreement to arbitrate exists between Farmers and the Nevada firm. Moreover, Farmers fails to demonstrate the existence of a written agreement to arbitrate between
 
 *634
 
 Farmers and the Nevada firm. Therefore, because Farmers fails to demonstrate the existence of a written agreement to arbitrate with the Nevada firm, and because the Nevada firm is not a signatory to any of the written agreements between Farmers and the California firm, we conclude that substantial evidence in the record supports the district court’s order denying Farmers’ motion to compel arbitration.
 
 [7]
 
 Nevertheless, based on several legal and equitable theories, including alter ego and estoppel, Farmers argues that the Nevada firm should be bound to the arbitration agreement as a nonsignatory because the Nevada and California firms are one and the same.
 

 Nonsignatory rule
 

 Farmers argues that the Nevada firm must be compelled to participate in arbitration as a nonsignatory to the existing written agreement to arbitrate between Farmers and the California firm. Generally, arbitration is a matter of contract and “ ‘a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.’ ”
 
 [8]
 
 Thus, while we recognize a strong policy in favor of arbitration, “such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract.’ ’
 
 [9]
 

 Nevertheless, the obligation to arbitrate, which was executed by another party, may attach to a nonsignatory.
 
 [10]
 
 In particular, a nonsignatory “may be bound to an arbitration agreement if so dictated by the ‘ordinary principles of contract and agency.’ ”
 
 [11]
 
 Accordingly, various courts have adopted “theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and
 
 *635
 
 5) estoppel.”
 
 [12]
 
 As to the facts and circumstances of the instant case, we conclude that the theories of incorporation by reference, assumption, and agency do not apply.
 

 Alter ego
 

 Farmers asserts that the alter ego theory should apply to bind the Nevada firm to its written agreements with the California firm because the Nevada and California firms are one and the same. We disagree.
 

 The requirements for finding alter ego, which must be established by a preponderance of the evidence, are:
 

 (1) The corporation must be influenced and governed by the person asserted to be its alter ego[;] (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.
 
 [13]
 

 It should be noted, however, that “ ‘[t]he corporate cloak is not lightly thrown aside’ and that the alter ego doctrine is an exception to the general rule recognizing corporate independence.”
 
 [14]
 
 This court “will uphold a district court’s determination with regard to the alter ego doctrine if substantial evidence exists to support the decision.”
 
 [15]
 

 
 *636
 
 Farmers’ argument as to finding alter ego is unpersuasive for several reasons. First, Farmers has failed to demonstrate that the Nevada firm was influenced and governed by the California firm. The mere fact that Swanson owns a 100-percent interest in the Nevada firm and a 50-percent interest in the California firm, while relevant, is insufficient to show that the Nevada firm was influenced and governed by the California firm.
 

 Second, Farmers contends that the Nevada firm and the California firm share a unity of interest. We disagree. The Nevada firm maintained an identity independent from that of the California firm. For example, the Nevada firm maintained its own independent federal tax identification number, operated under its own bylaws, was supervised by a licensed Nevada attorney, and possessed an independent business license, tax license, part-time staff, phone line, insurance coverage, and office sublease agreement.
 

 Likewise, Farmers fails to show that adherence to the Nevada and California firms as separate entities would sanction a fraud or promote injustice. Farmers is a sophisticated business entity that could have safeguarded any arbitration rights by reducing them to writing. In addition, the record reveals that Farmers will still be able to litigate the underlying fee dispute. Therefore, under the circumstances of this case, there is no evidence that adherence to the Nevada and California firms as separate entities will sanction a fraud or promote injustice.
 

 Accordingly, because Farmers did not meet its burden of demonstrating any of the three alter ego theory elements, we conclude that the district court properly rejected Farmers’ alter ego argument in denying its motion to compel the Nevada firm to arbitrate. Therefore, under the unique facts and circumstances of this case, we decline to extend alter ego as a theory for binding nonsignatories to arbitration agreements.
 

 Estoppel
 

 Upon review of the theories available for binding nonsignatories to arbitration agreements, we find as to this case the theory of estoppel the most persuasive. Under a theory of estoppel, “[a] nonsignatory is estopped from refusing to comply with an arbitration clause ‘when it receives a “direct benefit” from a contract containing an arbitration clause.’ ”
 
 [16]
 

 For example, in
 
 International Paper v. Schwabedissen Maschinen &
 
 Anlagen, the buyer of an industrial saw sued the saw man
 
 *637
 
 ufacturer on a theory of breach of contract.
 
 [17]
 
 The contract under which the buyer sued was an agreement between the saw manufacturer and its distributor.
 
 [18]
 
 The saw manufacturer moved to stay the proceedings pending arbitration, based on the arbitration clause in the manufacturer-distributor contract.
 
 [19]
 
 The United States Court of Appeals for the Fourth Circuit held that the buyer was estopped from refusing to arbitrate because the manufacturer-distributor contract formed the factual foundation for the claims asserted by the buyer against the manufacturer.
 
 [20]
 
 Because the buyer’s case centered on its asserted rights under the manufacturer-distributor contract, the court concluded that the buyer could not seek to enforce those contractual rights and at the same time “avoid the contract’s requirement that ‘any dispute arising out of’ the contract be arbitrated.”
 
 [21]
 

 Under
 
 International
 
 Paper, however, there is substantial evidence in the record that the Nevada firm was not receiving a direct benefit from the written agreement to arbitrate between Farmers and the California firm. Instead, the evidence supports that the Nevada firm directly benefited from the oral agreement between Swanson and Taylor as to the hourly rate and scope of the Nevada firm’s representation, not from the written agreement to arbitrate between Farmers and the California firm. Moreover, the Nevada firm is not attempting to assert any rights under the written agreement to arbitrate between Farmers and the California firm. Accordingly, since the Nevada firm was not a signatory to any of the written agreements to arbitrate and the Nevada firm did not directly benefit from those agreements in initiating its cause of action against Farmers, the district court properly concluded that equitable estoppel did not apply to bind the Nevada firm to the arbitration agreement.
 

 Unclean hands
 

 Farmers’ final argument suggests that the doctrine of unclean hands should bar the Nevada firm from avoiding having to participate in arbitration. The doctrine of unclean hands “derives from the equitable maxim that ‘he who comes into equity must come with clean hands.’ ’ ’
 
 [22]
 
 The doctrine bars relief to a party who has
 
 *638
 
 engaged in improper conduct in the matter in which that party is seeking relief. As such, the alleged inequitable conduct relied upon must be connected with the matter in litigation, otherwise the doctrine is not available as a defense.
 
 [23]
 

 Farmers contends that the Nevada firm is a sham storefront operation in violation of RPC 7.5A, which requires the presence of a resident member in the Nevada office.
 
 [24]
 
 Thus, it argues that the Nevada firm should not be allowed to avoid the agreement to arbitrate between Farmers and the California firm. We conclude that this argument is without merit because Farmers fails to demonstrate how compliance with RPC 7.5A or the doctrine of unclean hands is connected with the Nevada firm’s refusal to arbitrate. Accordingly, we conclude that the doctrine of unclean hands does not preclude the Nevada firm from seeking judicial relief.
 
 [25]
 

 CONCLUSION
 

 Because the Nevada firm did not enter into an agreement to arbitrate with Farmers and the evidence in the record was not sufficient to compel the Nevada firm to participate in arbitration as a nonsignatory, we conclude that the district court properly denied Farmers’ motion to compel arbitration. In addition, we conclude that the doctrine of unclean hands does not preclude the Nevada firm from seeking judicial relief. Accordingly, we affirm the district court’s order denying Farmers’ motion to compel arbitration. As to the remaining issues raised by the parties, we conclude that they are without merit.
 

 Hardesty and Parraguirre, JJ., concur.
 

 [1]
 

 The résumé of the California firm indicates that it is an 18-attorney law firm operating in Northern California, Southern California, Nevada, and the Western states generally.
 

 [2]
 

 See
 
 NRS 38.247(1)(a) (providing for an interlocutory appeal from an order denying a motion to compel arbitration).
 

 [3]
 

 May
 
 v.
 
 Anderson,
 
 121 Nev. 668, 672-73, 119 P.3d 1254, 1257 (2005).
 

 [4]
 

 McClanahan
 
 v.
 
 Raley's, Inc.,
 
 117 Nev. 921, 924, 34 P.3d 573, 576 (2001) (quoting
 
 State, Emp. Security v. Hilton Hotels,
 
 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting
 
 Richardson v. Perales,
 
 402 U.S. 389, 401 (1971))).
 

 [5]
 

 Int’l Assoc. Firefighters
 
 v.
 
 City of Las Vegas,
 
 104 Nev. 615, 618, 764 P.2d 478, 480 (1988).
 

 [6]
 

 NRS 38.221(3).
 

 [7]
 

 See DeCarnelle
 
 v.
 
 Guimont,
 
 101 Nev. 412, 414-15, 705 P.2d 650, 651 (1985) (holding that this court need not reverse where the district court fails to state reasons for its decision, so long as the district court reached the correct result).
 

 [8]
 

 Thomson-CSF, S.A. v. American Arbitration Ass’n,
 
 64 F.3d 773, 776 (2d Cir. 1995) (quoting
 
 Steelworkers
 
 v.
 
 Warrior & Gulf Co.,
 
 363 U.S. 574, 582 (1960)).
 

 [9]
 

 Id.;
 
 see Mikohn Gaming Corp.
 
 v.
 
 McCrea,
 
 120 Nev. 248, 252, 89 P.3d 36, 39 (2004).
 

 [10]
 

 Inter. Paper v. Schwabedissen Maschinen & Anlagen,
 
 206 F.3d 411, 416-17 (4th Cir. 2000).
 

 [11]
 

 Thomson-CSF,
 
 64 F.3d at 776 (quoting
 
 McAllister Bros. v. A & S Transp. Co.,
 
 621 F.2d 519, 524 (2d Cir. 1980)).
 

 [12]
 

 Id.;
 
 see Continental U.K. Ltd. v. Anagel Confidence Compania,
 
 658 F. Supp. 809, 813 (S.D.N.Y. 1987) (holding that if a “party’s arbitration clause is expressly incorporated into a bill of lading, nonsignatories . . . who are linked to that bill through general principles of contract law or agency law may be bound”);
 
 Gvozdenovic v. United Air Lines, Inc.,
 
 933 F.2d 1100, 1105 (2d Cir. 1991) (explaining that a party may be compelled to participate in arbitration if its conduct indicates that it clearly intended to arbitrate);
 
 Interbras Cayman Co. v. Orient Victory Shipping, Etc.,
 
 663 F.2d 4, 6-7 (2d Cir. 1981) (holding that principles of agency law may bind a nonsignatory to an agreement to arbitrate);
 
 Carte Blanche (Singapore)
 
 v.
 
 Diners Club Intern.,
 
 2 F.3d 24, 26 (2d Cir. 1993) (holding that the corporate veil may be pierced and a nonsignatory corporation may be held legally accountable for the actions of the other when the purpose is “to prevent fraud or other wrong, or where a parent dominates and controls a subsidiary”).
 

 [13]
 

 Ecklund v. Nevada Wholesale Lumber Co.,
 
 93 Nev. 196, 197, 562 P.2d 479, 479-80 (1977) (quoting
 
 McCleary Cattle Co. v. Sewell,
 
 73 Nev. 279, 282, 317 P.2d 957, 959 (1957),
 
 overruled in part on other grounds by Callie v. Bowling,
 
 123 Nev 181, 184, 160 P.3d 878, 880 (2007)).
 

 [14]
 

 LFC Mktg. Group, Inc. v. Loomis,
 
 116 Nev. 896, 903-04, 8 P.3d 841, 846 (2000) (quoting
 
 Baer v. Amos J. Walker, Inc.,
 
 85 Nev 219, 220, 452 P.2d 916, 916 (1969)).
 

 [15]
 

 Id.
 
 at 904, 8 P.3d at 846.
 

 [16]
 

 Inter. Paper v. Schwabedissen Maschinen &
 
 Anlagen, 206 F.3d 411, 418 (4th Cir. 2000) (quoting
 
 American Bureau Shipping v. Tencara Shipyard S.P.A.,
 
 170 F.3d 349, 353 (2d Cir. 1999)).
 

 [17]
 

 Id.
 
 at 414.
 

 [18]
 

 Id.
 

 [19]
 

 Id.
 

 [20]
 

 Id.
 
 at 418.
 

 [21]
 

 Id.
 

 [22]
 

 Omega Industries, Inc.
 
 v.
 
 Raffaele,
 
 894 F. Supp. 1425, 1431 (D. Nev. 1995) (quoting
 
 Ellenburg
 
 v.
 
 Brockway, Inc.,
 
 763 F.2d 1091, 1097 (9th Cir. 1985)).
 

 [23]
 

 Gravelle
 
 v.
 
 Burchett,
 
 73 Nev. 333, 342, 319 P.2d 140, 145 (1957).
 

 [24]
 

 At the time of trial, this ethical duty was set forth in SCR 199.1.
 

 [25]
 

 See Gravelle,
 
 73 Nev. at 342, 319 P.2d at 145.