# IN THE SUPREME COURT OF THE STATE OF NEVADA

TOMOKO CHOO; LARIAN STUDIOS US INC.; AND LARIAN STUDIOS, Petitioners,

vs.

THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE JOANNA KISHNER, DISTRICT JUDGE, Respondents,

and

STREAMLINE MEDIA GROUP, INC.; STREAMLINE STUDIOS MALAYSIA SDN BHD; AND STREAMFRAME CORPORATION, Real Parties in Interest.

No. 83527

**FILED**

AUG 1 1 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER GRANTING PETITION FOR WRIT OF PROHIBITION*

This original petition for a writ of prohibition challenges district court orders denying motions to dismiss for lack of personal jurisdiction.

Real parties in interest filed a complaint alleging that petitioner Tomoko Choo, a Malaysian citizen, breached a separation agreement with real party in interest Streamline Media Group, Inc. (Streamline) and conspired with nonparty The Dragon Commander, Ltd. (TDC), an Irish company, to obtain the confidential and proprietary information of Streamline and its subsidiaries, real parties in interest Streamframe Corporation (Streamframe) and Streamline Studios Malaysia (Streamline Studios).

22-25235

Real parties in interest alleged that personal jurisdiction over petitioners and foreign sister entities, Arrakis Naamloze Vennootschap (Arrakis),[1] a Belgian company, and Larian Studios US, Inc. (Larian Studios US), a Delaware company, was proper under either the agency, alter-ego, or conspiracy theories of imputation based on the conduct of their nonparty sister entity, TDC. After both of these petitioners separately moved to dismiss for lack of personal jurisdiction, the district court denied Larian Studios US's motion and exercised personal jurisdiction over it on the basis that TDC had acted as its agent, alter ego, or co-conspirator with Choo.[2] The district court also denied Arrakis's motion to dismiss, granting jurisdictional discovery instead. Arguing that the district court incorrectly decided their motions, Larian Studios US and Arrakis now seek a writ of prohibition barring the district court from proceeding with the action against them.

Having considered the petition, answer, reply, and supporting documents, we conclude that writ relief is warranted because the district court improperly exercised personal jurisdiction over Larian Studios US and improperly granted jurisdictional discovery as to Arrakis. *See* NRS 34.320 (providing that a writ of prohibition is available to arrest or remedy

---

[1]Arrakis has been identified in the caption as Larian Studios, which is the name by which it does business; however, we refer to the entity by its incorporated name to avoid confusion.

[2]The district court's exercise of personal jurisdiction over petitioner Choo is not implicated in this matter, as she does not seek any relief in this petition or otherwise challenge the district court's decision that she consented to personal jurisdiction pursuant to a separation agreement between her and Streamline. Thus, our references to petitioners include only Arrakis and Larian Studios US.

district court actions taken without or in excess of jurisdiction); *Viega GmbH v. Eighth Judicial Dist. Court*, 130 Nev. 368, 374, 328 P.3d 1152, 1156 (2014) ("As no adequate and speedy legal remedy typically exists to correct an invalid exercise of personal jurisdiction, a writ of prohibition is an appropriate method for challenging district court orders when it is alleged that the district court has exceeded its jurisdiction."). As we explained in *Viega GmbH*, a plaintiff who relies on an imputation theory of personal jurisdiction premised on the corporate relationship between the defendant and a nonparty entity, as real parties in interest do here, must make a prima-facie showing that "overcom[es] the presumption of separateness" between entities "of a carefully structured corporate family." 130 Nev. at 382, 328 P.3d at 1161. A failure to do so precludes both jurisdictional discovery and personal jurisdiction. *Id.* (explaining that the plaintiff did not offer "facts . . . sufficient . . . to allow" it "to proceed with jurisdictional discovery" to obtain evidence to prove personal jurisdiction where it had "shown no more than a typical parent-subsidiary relationship, the separateness of which is a basic premise of corporate law"). We do not need to decide whether a prima-facie showing for jurisdictional discovery requires less evidence than a prima-facie showing for personal jurisdiction, as both issues necessarily require the plaintiff to *at least* rebut the presumption of corporate separateness. *See id.* at 375, 328 P.3d at 1157. It follows that if, as discussed below, real parties in interest fail to make a prima-facie showing sufficient in this regard, then the district court erred both in the decision to grant jurisdictional discovery over Arrakis and to exercise personal jurisdiction over Larian Studios US.

Reviewing both decisions de novo, *see In re Halverson*, 123 Nev. 493, 509, 169 P.3d 1161, 1173 (2007), we agree with Arrakis and Larian

Studios US that real parties in interest failed to offer sufficient evidence to overcome the presumption of corporate separateness to support their imputation theories of personal jurisdiction. Pursuant to Nevada's long-arm statute, NRS 14.065, personal "[j]urisdiction over a nonresident defendant is proper" to the full extent permitted by the Due Process Clause "under the Fourteenth Amendment." *Viega GmbH*, 130 Nev. at 374-75, 328 P.3d at 1156. Accordingly, the defendant must have sufficient "minimum contacts with the state" such that "the defendant could reasonably anticipate" litigation in the forum and such that the exercise of personal jurisdiction comports "with 'traditional notions of fair play and substantial justice.'" *Id.* at 375, 328 P.3d at 1156 (internal quotations omitted) (quoting *Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 122 Nev. 509, 512, 134 P.3d 710, 712 (2006)).

*Agency theory of personal jurisdiction*

Real parties in interest argue that they set forth sufficient evidence that TDC was the agent of Arrakis and Larian Studios US for the purpose of competing against them and conspiring to obtain their confidential information, such that personal jurisdiction is proper under the agency theory. They rely on three aspects of a pilot agreement between nonparty TDC and Streamline to support the existence of an agency relationship between TDC, Arrakis, and Larian Studios US: (1) the agreement's identification of Swen Vincke, Arrakis's founder and director, as TDC's CEO and representative for purposes of the agreement; (2) the agreement's inclusion of an email address used by TDC that included an "@larian.com" domain name, which other sister entities or subsidiaries presumably used; and (3) the agreement's requirement for TDC to send payment to Streamline's bank account, which Arrakis and Larian Studios

US allegedly completed one time on TDC's behalf.[3] We disagree that the pilot agreement suggests an agency relationship.

The agency theory of personal jurisdiction recognizes the separate "corporate identity of the parent company" but nonetheless attributes "the acts of the subsidiary agent" to the parent corporation on the rationale that the parent directed the subsidiary's actions. *Id.* at 376, 328 P.3d at 1157 (alterations omitted) (quoting, in the second phrase, *F. Hoffman-La Roche, Ltd. v. Superior Court of Santa Clara Cty.*, 30 Cal. Rptr. 3d 407, 418 (Ct. App. 2005)). Even assuming the agency theory extends to sister entities, the threshold issue is the existence of "an agency relationship" between the corporate entities. *Id.* at 377, 328 P.3d at 1158.

---

[3]Although real parties in interest attempt to rely on other "facts," those facts are either allegations in the complaint or unsubstantiated assumptions, which we have repeatedly held fail to satisfy the showing required for personal jurisdiction. *See Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 693, 857 P.2d 740, 744 (1993) ("However, the plaintiff must introduce some evidence and may not simply rely on the allegations of the complaint to establish personal jurisdiction."). Similarly, their reliance on the district court's order does not help, as the district court's recitation of the parties' arguments in a finding-of-facts section does not transform those arguments into facts.

Although we provisionally granted real parties in interest's December 22, 2021 motion to supplement the record on March 11, 2022, we now deny that motion, as the evidence attached was not presented to the district court; we have not considered that evidence in resolving this writ petition. *Cf. Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 816, 822, 407 P.3d 702, 708 (2017) (recognizing, in addressing whether to consider a petition for mandamus relief, that "in the context of extraordinary writ relief, consideration of legal arguments not properly presented to and resolved by the district court will almost never be appropriate"); *Vacation Vill., Inc. v. Hitachi Am., Ltd.*, 111 Nev. 1218, 1220, 901 P.2d 706, 707 (1995) (declining to consider evidence that was "never presented to the district court").

While "[g]enerally, an agency relationship" gives "one person . . . the right to control the performance of another," corporate relationships "necessarily include[ ] some elements of control." *Id.* at 377-78, 328 P.3d at 1158. Accordingly, jurisdiction over the foreign parent company based on an agency relationship requires "a degree [of control] 'more pervasive than common features' of ownership" under corporate law. *Id.* at 378-79, 328 P.3d at 1159 (alterations omitted) (quoting *F. Hoffman-La Roche*, 30 Cal. Rptr. 3d at 418).

Real parties in interest failed to demonstrate the type of pervasive corporate control required to impute contacts from a nonparty to a defendant for an agency theory of personal jurisdiction. *See id.* at 379, 328 P.3d at 1159 (explaining that the control exercised by the principal must "move[ ] beyond the establishment of general policy and direction for the subsidiary and in effect take[ ] over performance of the subsidiary's day-to-day operations in carrying out that policy" (quoting *F. Hoffman-La Roche*, 30 Cal. Rptr. 3d at 419)). The fact that Vincke serves as an officer or director of Arrakis, Larian Studios US, and TDC, coupled with the use of the same corporate-family email domain, shows at most "the amount of control typical in a" corporate family and thus fails to demonstrate an agency relationship. *See id.* at 380, 328 P.3d at 1160 (deeming evidence that subsidiaries and foreign parents shared a board member, corporate logo, and website sufficient only to "show the amount of control typical in a parent-subsidiary relationship" and thus "insufficient to demonstrate agency"). Moreover, real parties in interest point to only one instance in which Arrakis and Larian Studios US together wired payment to Streamline's Nevada bank account on behalf of TDC, but one isolated payment made on behalf of a sister entity in connection with one agreement

does not evidence the type of close financial connection characteristic of even *typical* corporate control. *See F. Hoffman-La Roche*, 30 Cal. Rptr. 3d at 418 (noting that normal corporate control, which is insufficient for an agency theory of personal jurisdiction, encompasses "a close financial connection between parent and subsidiary and a certain degree of direction and management exercised by the former over the latter" (quoting *Sonora Diamond Corp. v. Superior Court of Tuolumne Cty.*, 99 Cal. Rptr. 2d 824, 838 (Ct. App. 2000)). Thus, real parties in interest's evidentiary showing falls short of what we require to demonstrate control beyond the existence of a typical corporate relationship. Without more, it was improper for the district court to rely on the agency theory to exercise personal jurisdiction over Larian Studios US and to allow jurisdictional discovery with respect to Arrakis.

*Alter-ego theory of personal jurisdiction*

Real parties in interest argue that the same aspects of the pilot agreement they relied on to assert an agency theory of personal jurisdiction also establish that TDC acted as the alter ego of Arrakis and Larian Studios US, such that the court may exercise personal jurisdiction under the alter-ego theory. We disagree.

The alter-ego theory permits a party "to pierce the corporate veil to impute a subsidiary's contacts to the parent company by showing that the subsidiary and the parent are one and the same" on the rationale that the entities are effectively the same. *Viega GmbH*, 130 Nev. at 376, 328 P.3d at 1157. Even assuming the alter-ego theory extends to sister entities, the existence of an alter-ego relationship requires evidence that

> (1) The corporation . . . [is] influenced and governed by the person asserted to be its alter ego; (2) There . . . [is] such unity of interest and ownership that one [entity] is inseparable from the other; and

Supreme Court
OF
Nevada

(O) 1947A

7

(3) The facts . . . [are] such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.

*Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 635, 189 P.3d 656, 660 (2008) (quoting *Ecklund v. Nev. Wholesale Lumber Co.*, 93 Nev. 196, 197, 562 P.2d 479, 479-80 (1977)).

As with the agency theory, real parties in interest failed to show that an alter-ego relationship exists to impute contacts from a nonparty to a defendant for an alter-ego theory of personal jurisdiction. The existence of a unified corporate-family identity, such as shared leadership and email domains, shows at most just that, i.e., the organizations form a corporate family, but it does not establish that Arrakis and Larian Studios US influenced or governed TDC. *Cf. id.* at 636, 189 P.3d at 660-61 (explaining that "[t]he mere fact that" the same party "owns a 100-percent interest in" one entity and "a 50-percent interest in" another entity, "while relevant, is insufficient to show that" one entity influences and governs the other entity). Additionally, the fact that Arrakis and Larian Studios US together made one isolated payment to Streamline's Nevada bank account on behalf of TDC in connection with one, short-term agreement does not support that the three entities were financially or commercially intertwined to such an extent that they collectively "share[d] a unity of interest." *See id.* at 636, 189 P.3d at 661 (explaining the type and extent of evidence that may demonstrate "a unity of interest" necessary for an alter-ego relationship). Accordingly, we conclude that it was improper for the district court to rely on the alter-ego theory to exercise personal jurisdiction over Larian Studios US and to allow jurisdictional discovery with respect to Arrakis.

*Conspiracy theory of personal jurisdiction*

Finally, real parties in interest assert that personal jurisdiction over Arrakis and Larian Studios US is proper under a conspiracy theory of personal jurisdiction based on two agreements that allegedly show a conspiracy between Arrakis, Larian Studios US, TDC, and Choo to harm real parties in interest: (1) the pilot agreement between Streamline and TDC and (2) a separation agreement between Streamline and Choo, which contains a noncompete clause. We disagree.

"A conspiracy theory of personal jurisdiction provides that a nonresident defendant who lacks sufficient minimum contacts with the forum may be subject to personal jurisdiction based on a co-conspirator's contacts with the forum." *Tricarichi v. Coop. Rabobank, U.A.*, 135 Nev. 87, 95, 440 P.3d 645, 653 (2019). The court attributes one conspirator's acts "with the forum" done "in furtherance of the conspiracy" to the other co-conspirators on the rationale that "co-conspirators are deemed . . . each other's agents." *Id.* at 96, 440 P.3d at 653 (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *29 (S.D.N.Y. Oct. 20, 2015)). The conspiracy theory gives the court jurisdiction where (1) a conspiracy exists, "(2) the acts of co-conspirators meet minimum contacts with the forum, and (3) the co-conspirators could have reasonably expected at the time of entering into the conspiracy that their actions would have consequences in the forum state." *Id.* at 97, 440 P.3d at 654.

Here, even assuming sufficient evidence supports a conspiracy between Choo and TDC, the pilot agreement and separation agreement provide no through line from Arrakis and Larian Studios US to Choo and TDC, and thus, they do not establish the threshold requirement of the existence of a conspiracy between Arrakis, Larian Studios US, TDC, and

SUPREME COURT
OF
NEVADA

(O) 1947A

Choo. *See Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 813, 335 P.3d 190, 198 (2014) (explaining that a "civil conspiracy arises where two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results" (quoting *Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998))). Because Choo entered into the separation agreement with Streamline *after* she allegedly conspired with TDC during her consultation services for TDC, the alleged breach of this agreement by violation of the noncompete clause does not establish a conspiracy between the entities that allegedly arose months earlier. Moreover, the fact that Larian Malaysia, a nonparty entity distinct from Arrakis and Larian Studios US, subsequently hired Choo to head its operations in Malaysia in alleged breach of the separation agreement does nothing to establish an agency or alter-ego relationship with Arrakis and Larian Studios US such that those actions may be imputed to Arrakis and Larian Studios US.

As to the pilot agreement, real parties in interest failed to show personal jurisdiction based on Arrakis's and Larian Studios US's alleged participation in the conspiracy based on that agreement, as the significance of their evidence necessarily relies on their unsuccessful agency or alter-ego imputation theories to attribute both Larian Malaysia's actions in hiring Choo and TDC's actions in acquiring confidential information to Arrakis and Larian Studios US. Accordingly, we conclude that the district court improperly relied on the conspiracy theory to exercise personal jurisdiction over Larian Studios US and to permit jurisdictional discovery as to Arrakis.

Accordingly, we

SUPREME COURT
OF
NEVADA

(O) 1947A

ORDER the petition GRANTED AND DIRECT THE CLERK OF THIS COURT TO ISSUE A WRIT OF PROHIBITION instructing the court to grant the motions to dismiss based on lack of personal jurisdiction filed by Larian Studios US and Arrakis.[4]

_____, J.
Silver

_____, J.
Cadish

_____, J.
Pickering

cc:  Hon. Joanna Kishner, District Judge
     Hutchison & Steffen, LLC/Las Vegas
     McDonald Carano LLP/Las Vegas
     Eighth District Court Clerk

---

[4]In light of this disposition, we vacate our stay entered on May 18, 2022.