MGM GRAND HOTEL-RENO, INC., Appellant, *v.* IVAN INSLEY, Respondent.

No. 16807

December 4, 1986 728 P.2d 821

514

*McDonald, Carano, Wilson, Bergin, Frankovich & Hicks,* Reno, for Appellant.

*Riley M. Beckett* and *George McNally,* Carson City, for Respondent.

## OPINION

*Per Curiam:*

Respondent Ivan Insley (Insley), a stage technician employed by appellant MGM Grand Hotel-Reno, Inc. (MGM), was injured while at work on March 16, 1984. He notified his supervisor and

was taken to Washoe Medical emergency room. He was released with instructions to remain off work for three days and to schedule an appointment with a private physician. On March 20, 1984, the injury was diagnosed as an umbilical hernia requiring surgical repair. On March 27, 1984, Insley sought a second opinion and was referred by MGM to Dr. Ramos who confirmed the need for surgery within the next few weeks. SIS Services, Inc., the claims administrator for MGM, determined that an umbilical hernia was not a compensable industrial injury and denied coverage. Insley filed an appeal with the Nevada Department of Administration. After a hearing on July 3, 1984, MGM was ordered by the hearing officer to accept Insley's claim for benefits.[1]

Insley underwent surgery on April 10, 1984. That same day MGM sent Insley a letter notifying him that he had been discharged under a provision in the collective bargaining agreement for failing to report for work without a satisfactory excuse for his absence. MGM also denied medical coverage under the company's group health insurance. Insley claimed that he had kept MGM advised of his medical status.

As a member of the International Alliance of Theatrical Stage Employees and Moving Pictures Machine Operators of the United States and Canada, Local Union No. 363, Insley was subject to the collective bargaining agreement between the union and MGM. The collective bargaining agreement provided a three-step arbitration procedure as the exclusive procedure for resolving grievances arising between MGM and its employees or the union. Insley, however, alleged that he had been discharged from his employment by MGM in retaliation for appealing the denial of his claim for industrial insurance benefits. Instead of submitting to arbitration, Insley filed a complaint with the district court alleging four causes of action: (1) that the conduct of MGM and SIS Services breached an implied covenant of good faith and fair dealing of the contract of employment; (2) retaliatory discharge; (3) intentional infliction of emotional distress; and (4) conspiracy to deprive him of his industrial insurance benefits.

In response, MGM filed a motion to compel arbitration as mandated by federal law and the collective bargaining agreement. The district court held that the bargaining agreement did not reach the claims brought by the plaintiff and denied the motion to compel arbitration. MGM appeals.[2]

---

[1]According to MGM, Insley has been paid all the benefits due him pursuant to the order of the hearing officer. Insley does not deny this allegation.

[2]NRS 38.205 provides in pertinent part:

 1. An appeal may be taken from:

 (a) An order denying an application to compel arbitration made under NRS 38.045. . . .

## DISCUSSION

MGM contends that Insley's state law tort claims are preempted as a matter of federal law and must be resolved by arbitration because they fall within the ambit of the collective bargaining agreement.[3] Insley counters that his state law action falls within a recognized exception to the preemption doctrine and that he is not required to arbitrate his claims under the collective bargaining agreement. It is necessary for us to determine whether Insley's tort claims merely allege a violation of the labor contract and are preempted by federal law or whether his claims exist independently of the labor agreement and are properly within the jurisdiction of the state court.

A suit in state court alleging a violation of a provision of a labor contract would be preempted by Section 301 of the Labor Management Relations Act (LMRA) and resolved by federal labor law.[4] A tort action brought in state court which would require the court to interpret the meaning or scope of a term in the employment contract would also be preempted. Allis Chalmers v. Lueck, 471 U.S. 202 (1985).

". . . state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." *Id.* at 213. We must focus on whether Insley's tort actions confer "nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.*[5]

---

[3]MGM also contends that Nevada's Uniform Arbitration Act (NRS Chapter 38) compels dismissal or a stay of Insley's complaint pending arbitration. Resolution of this issue would be identical whether we apply our own state law or the federal Labor Management Relations Act. Since we must examine the federal labor law in resolving MGM's contentions, we need not reach MGM's contentions regarding our state arbitration act.

[4]Section 301 of the Labor Management Relations Act (LMRA) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . ." Labor Management Relations Act of 1947 § 301(a), 29 U.S.C. § 185(a) (1982). In enacting Section 301, Congress intended the doctrines of federal labor law uniformly to prevail over inconsistent local rules. Teamsters v. Lucas Flour Co., 369 U.S. 95, 104 (1962).

[5]In *Allis-Chalmers,* the Supreme Court held that the state tort at issue, bad faith handling of a disability claim included in a collective bargaining agreement, derived from the rights and obligations established by the contract and was defined by the contractual obligation of good faith. Since any attempt to assess tort liability under those circumstances would inevitably

Section 301 does not necessarily preempt every state law claim asserting a right that relates in some way to a provision in a collective bargaining agreement, or that relates more generally to the parties to such an agreement. *Id.* at 220. Congress did not intend to disturb state laws in existence that set minimum labor standards, but are unrelated in any way to the processes of bargaining or self-organization. Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, ......, 105 S.Ct. 2380, 2398 (1985). "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety . . . are only a few examples." *Id.* at 2398, quoting De Canas v. Bica, 424 U.S. 351, 356 (1976).

The State Industrial Insurance System (SIIS) is an independent public agency which administers and is supported by the state insurance fund. NRS 616.1701. Employers and employees are governed by the terms, conditions and provisions set out in NRS Chapter 616 and 617.

The obligation to pay compensation benefits and the right to receive them exists as a matter of statute independent of any right established by contract. They are minimum standards "independent of the collective-bargaining process [that] devolve on [employees] as individual workers, not as members of a collective organization." Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, ......, 105 S.Ct. 2380, 2397 (1985). Indeed, a contract of employment which would waive or modify the terms or liability created by NRS 616 would be void. NRS 616.265.

MGM is a self-insurer under NRS 616.291. It has contracted with SIS Services, Inc. to administer all injury claims arising under worker's compensation statutes. MGM's contract with SIS Services is a separate agreement independent of the collective bargaining agreement. Tortious conduct arising out of that relationship, therefore, is a matter of state, not federal, law. We turn now to consider each of Insley's claims.

1. *IMPLIED COVENANT OF GOOD FAITH.*

Insley alleges that the collective bargaining agreement contains

---

involve interpretation of the terms of the labor agreement, plaintiff's claims were to be dismissed or preempted by Section 301 of the Labor Management Relations Act of 1947.

an implied covenant of good faith and fair dealing which entitles him to be dealt with in good faith by SIS Services and MGM. This question is preempted by federal labor law since it would require a court to interpret the terms of the labor contract. Under federal law, state courts are without jurisdiction to decide that issue. *See* Allis-Chalmers Corp. v. Lueck, *supra.*

The question whether Insley is entitled to be dealt with in good faith by MGM and SIS Services for the payment of claim benefits, however, is a question which properly comes within the jurisdiction of a state court and can be heard without looking to the employment contract or federal law. The mere fact that Insley is subject to a collective bargaining agreement does not affect the parties' duties and obligations under state law. Consequently, the district court correctly refused to compel arbitration as to this aspect of Insley's claim.

## 2. *RETALIATORY DISCHARGE.*

Insley claims that he was fired in retaliation for appealing the denial of his industrial accident claim. The Ninth Circuit has held that a claim for wrongful termination based on state public policy is not preempted by Section 301 of the LMRA. Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367 (9th Cir. 1984), *cert. denied,* 105 S.Ct. 2319 (1985). In so doing, the Ninth Circuit Court stated:

> A claim grounded in state law for wrongful termination for public policy reasons poses no significant threat to the collective bargaining process; it does not alter the economic relationship between the employer and employee. The remedy is in *tort,* distinct from any contractual remedy an employee might have under the collective bargaining contract. It furthers the state's interest in protecting the general public—an interest which transcends the employment relationship.

*Id.* at 1375. As a matter of strong public policy, this state recognizes that "retaliatory discharge by an employer stemming from the filing of a workmen's compensation claim by an injured employee is actionable in tort." Hansen v. Harrah's, 100 Nev. 60, 64, 675 P.2d 394, 397 (1984). Such an action arises from non-negotiable benefits provided by state law independent of any right or remedy established by contract. Following *Garibaldi* and *Hansen,* we hold that Insley's state tort action for retaliatory

discharge is not preempted.[6] Accordingly, the district court correctly refused to compel arbitration as to this claim.

### 3. *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND CONSPIRACY.*

Plaintiff's cause of action for intentional infliction of emotional distress is also within the jurisdiction of the state court. In Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25, 430 U.S. 290 (1977), the Supreme Court held that the National Labor Relations Act did not preempt a state tort action for intentional infliction of emotional distress where the state tort action can be adjudicated without regard to the merits of the underlying labor dispute.

The alleged conspiracy between MGM and SIS Services to deprive Insley of industrial insurance benefits is also a matter properly within the jurisdiction of state court. SIS Services administers SIIS claims for MGM, a self-insurer under Nevada law. As we have explained above, the relationship between SIS Services and MGM exists independently of and is not affected by any bargaining agreement. Thus, the district court did not err by refusing to compel arbitration as to these claims.

Based upon the preceding discussion, we hold, with one exception, that Insley's causes of action are not preempted under Section 301 of the LMRA and are therefore properly within the jurisdiction of the state court. Insley, therefore, is not required to resolve his claims through arbitration under the collective bargaining agreement. We therefore affirm the order of the district court denying MGM's motion to compel arbitration. We reverse only that part of the district court's order refusing to compel arbitration on Insley's claim that the collective bargaining agreement contains an implied covenant of good faith and fair dealing.

---

[6]We recognize that there is authority to the contrary. *See, e.g.*, Vantine v. Elkhart Brass Mfg. Co. Inc., 762 F.2d 511 (7th Cir. 1985); Johnson v. Hussman Corp., 610 F.Supp. 757 (E.D.Mo. 1985); Lingle v. Norge Div. of Magic Chef, Inc., 618 F.Supp. 1448 (S.D.Ill. 1985).

Also, our holding is consistent with *Allis-Chalmers v. Lueck, supra.* If Insley had sued for bad faith and retaliatory discharge for seeking benefits under MGM's group health and benefit program, then we would have to agree that any state tort action is preempted under LMRA Section 301.